UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOUVIER BEALE JR., as the EXECUTOR of the ESTATE of EDITH BOUVIER BEALE, *Plaintiff*, -against- WALLACE GALLERY and TERRY WALLACE, *Defendants.* | ECF CASE No. 2:18-cv-871 **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Bouvier Beale Jr. ("Beale Jr."), as executor of the Estate of Edith Bouvier Beale (the "Estate"), by its attorneys, Cahill Cossu Noh & Robinson LLP, for its Complaint against Defendant Wallace Gallery (the "Gallery") and Terry Wallace ("Wallace," together with the Gallery, "Defendants"), alleges as follows:

### NATURE OF THE ACTION

1.  This is an action for replevin and conversion arising out of the refusal of the Gallery to return to the Estate a 1950 portrait by Irwin Hoffman of Jacqueline Kennedy Onassis (née Bouvier) ("Jackie"), painted when she was 19 years old (the "Painting"), owned by the Estate, that the Gallery has possessed, displayed, and held out for purchase.

2.  The Estate, having recently discovered that the Painting is the very same painting known to have been stolen years ago, has demanded that the Gallery provide proof of its ownership of the Painting or to otherwise return the Painting to the Estate.

3.  The Estate has a right to possession of the Painting that is superior to that of the Gallery. The Gallery has refused to provide any information as to the Painting's chain of

1

custody or its ownership right in the Painting. This action seeks the return of the Painting and related relief.

## PARTIES

4. Plaintiff Bouvier Beale Jr. is an individual residing in Mill Valley, California, and is the executor of the Estate and the representative of the heirs to the Estate.

5. On information and belief, Defendant Wallace Gallery is an unincorporated entity doing business in New York, with its principal place of business at 37A Main Street, East Hampton, NY 11937.

6. On information and belief, Defendant Wallace Gallery is owned by Terry Wallace.

7. On information and belief, Defendant Terry Wallace is an individual residing in Suffolk County, New York.

## JURISDICTION AND VENUE

8. Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. § 1332(a)(1), as this is an action between a citizen of California and citizens of New York, and the value of the art work in controversy well exceeds the $75,000 threshold.

9. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391 because the Gallery is located and does business in this District, the Work is being wrongfully held there by the Gallery, and a substantial part of the acts or omissions giving rise to the claim occurred in this District.

**STATEMENT OF FACTS**

**The Painting Was a Family Heirloom**

10. The Painting was commissioned by John Vernou Bouvier III ("Black Jack") in 1950 as a portrait of his then 19-year-old daughter, Jackie.

11. Prior to his death, Black Jack gave the Painting to his sister Edith Ewing Bouvier Beale ("Big Edie").

**The Theft of the Painting from the Beale Family**

12. Big Edie, along with her daughter Edith Bouvier Beale ("Little Edie"), lived at a property in East Hampton known as Grey Gardens, which was famously the subject of a 1975 documentary of the same name.

13. During the 1970s, Big Edie and Little Edie were at odds with the local municipal governments over the condition of Grey Gardens.

14. At least one documented instance of burglary to Grey Gardens occurred during the 1960s and 1970s, however, due to the contentious relationship between the Beales and the local government, the Beales declined to report the theft of their valuables.

15. Upon information and belief, the Painting was located at Grey Gardens until the late 1960s, when it disappeared from the property.

16. Upon Big Edie's death, title to the Painting, and any right and interest therein, passed to Little Edie.

17. Prior to her death, Little Edie reminded Beale Jr. and his wife, Eva Beale, that various items had been stolen from Grey Gardens over the years, including a portrait of Jackie that Black Jack had given to Big Edie.

18. Little Edie died in 2002 in Bal Harbour, Florida.

19. Beale Jr. is the lawful representative of Little Edie's estate.

20. On information and belief, sometime in the 1970s after its disappearance, the Painting came into the possession of one or more antiques dealers, whose identity is unknown to the Estate (collectively, the "John Doe Dealers").

**The Painting's Reappearance**

21. In September 1998, the Painting was featured in an article in *Hamptons Magazine* (the "Article"), which acknowledged that the Painting had disappeared from Grey Gardens.

22. In the Article, the Gallery publicly claimed that it had purchased the Painting from a John Doe Dealer sometime "recently" prior to 1998, and that the John Doe Dealer had been in possession of the Painting since the mid-1970s.

23. In 2004, Eva Beale saw the Painting at the Wallace Gallery.

24. At that time, Eva Beale inquired of Wallace as to the Painting's provenance, and Wallace indicated that he acquired the painting from the John Doe Dealer.

25. In the same encounter, Eva Beale asked Wallace for the identity of the John Doe Dealer.

26. Wallace refused to identify the John Doe Dealer, and stated that such John Doe Dealer was deceased.

**The Estate's Demands for Return of the Painting**

27. On 2016-July-09, while archiving Little Edie's personal records, Eva Beale found a copy of the Article, and realized that the Painting was the same painting to which Little Edie had referred as having previously been stolen from Grey Gardens.

28. That same day, Eva Beale called the Gallery and again inquired as to the provenance of the Painting.

29. Wallace promised Eva Beale that he would call her back.

30. On 2016-July-11, Beale Jr., on behalf of the Estate, sent the Gallery a letter requesting provenance information for the Painting and proof of the Gallery's title to the same.

31. On 2016-July-12, Wallace responded by e-mail on behalf of the Gallery, denying the Estate's request for information about the Painting's provenance, but stating that such provenance was "impeccable."

32. On 2016-July-12, Eva Beale, on behalf of Beale Jr. and the Estate, replied to Wallace by e-mail, again requesting specific details of the Painting's provenance.

33. On 2016-July-14, the Gallery responded by e-mail, again refusing to provide the provenance information, stating that such information was "confidential."

34. On 2016-August-24, the Estate, through its counsel, again contacted the Gallery through its counsel, requesting the provenance information and proof of the Gallery's ownership of the Painting, and demanded that if the Gallery was unable to prove superior title, that the painting be returned to the Estate.

35. On 2016-September-19, the Gallery's counsel responded on behalf of the Gallery, again refusing to provide any information as to the provenance of the Painting, and further refusing to return the Painting to the Estate.

36. On information and belief, no other claim to title of the Painting has been made to the Gallery.

37. The Gallery has no ownership interest in the Painting.

38. The Estate has a superior right of possession to the Painting than the Gallery.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment)**

39. The Estate repeats and realleges the allegations set forth in paragraphs 1 through 38 as if fully set forth herein.

40. This claim for a declaratory judgment arises under 28 U.S.C. § 2201.

41. As more particularly set forth above and below, the Estate is the sole owner of the Painting.

42. The Gallery claims an ownership interest in the Painting.

43. There thus exists an actual controversy concerning the ownership of the Painting.

44. As a result of the foregoing, the Estate is entitled to a judgment recognizing its title to the Painting.

**SECOND CLAIM FOR RELIEF**
**(Replevin)**

45. The Estate repeats and realleges the allegations set forth in paragraphs 1 through 44 as if fully set forth herein.

46. The Estate is the sole rightful owner of the Painting and is entitled to possession thereof.

47. The Painting was wrongfully taken from the Estate and/or detained.

48. The Gallery has no right to possession of the Painting.

49. The Estate has demanded that the Gallery return the Painting.

50. The Gallery has repeatedly refused to return the Painting.

51. The Gallery has held the Painting out for sale without the consent or other authorization of the Estate.

52. Without legal justification therefor, the Gallery has refused to deliver the Painting to the Estate and has unlawfully retained possession of the Painting.

53. As a result of the foregoing, the Gallery is entitled to a judgment, awarding it possession of the Painting.

### THIRD CLAIM FOR RELIEF
### (Conversion)

54. The Estate repeats and realleges the allegations set forth in paragraphs 1 through 53 as if fully set forth herein.

55. The Estate is the sole rightful owner of the Painting and is entitled to possession thereof.

56. The Gallery has no right to possession of the Painting.

57. The Estate has demanded that the Gallery return the Painting.

58. Despite having been informed of the Estate's ownership of the Painting, the Gallery continues to exercise dominion over the Painting in a manner inconsistent with the rights of the true owner, the Estate.

59. The Gallery's continued refusal to return the Painting constitutes intentional interference with the Estate's ownership and its right to possess the Painting, and thus constitutes conversion.

60. As a result of the Gallery's conversion of the Painting, the Estate has been deprived of the use and enjoyment of the Painting.

61. As a result of the foregoing, the Estate has suffered, and will continue to suffer, irreparable injury in an amount to be determined at trial, as the Painting is unique and irreplaceable.

## FOURTH CLAIM FOR RELIEF
**(Injunctive Relief)**

62. The Estate repeats and realleges the allegations set forth in paragraphs 1 through 61 as if fully set forth herein.

63. The Gallery has held the Painting out for sale to third-parties without the Estate's knowledge or authorization, with the intent of keeping the sale proceeds for itself.

64. The Painting is a unique and irreplaceable work of art.

65. On information and relief, absent injunctive relief, the Gallery will continue to offer the Painting for sale to third parties.

66. By reason of the foregoing, the Estate has suffered, and is continuing to suffer, irreparable injury, for which monetary damage would be an insufficient and inadequate remedy.

67. By reason of the foregoing, the Estate is entitled to a permanent injunction, enjoining the Gallery from selling, loaning, transferring, pledging as collateral, encumbering, assigning, gifting, disposing of, or otherwise taking any actions with respect to the Painting, other than to maintain insurance with respect to the Painting and to return the Painting into the possession of the Estate.

68. By reason of the foregoing, the Estate is entitled to a permanent injunction requiring the Gallery to return and transfer all the Painting into the Estate's possession.

69. By reason of the foregoing, the Estate is entitled to a permanent injunction requiring the Gallery to disclose the identity of any lenders to whom the Painting was pledged as collateral, including without limitation such lenders' names, addresses, and telephone numbers.

70. Because the Gallery's conduct is ongoing, and threatens an immediate and irreparable injury to the Estate, the Estate is entitled to a temporary restraining order, as to each of the provisions set forth in paragraph 66 herein.

71. Because the Gallery's ongoing conduct, if allowed to continue during the pendency of this action, would cause the Estate irreparable injury for which it would have no adequate remedy at law, the Estate is entitled to a preliminary injunction, as to each of the provisions set forth in paragraph 66 herein.

**WHEREFORE**, Plaintiff demands judgment as follows:

(a) Declaring that the Estate is the sole owner of the Painting and is entitled to immediate possession thereof;

(b) Granting the Estate sole possession and control of the Painting and ordering and enjoining the Gallery to turn over the Painting to the Estate;

(c) Awarding the Estate compensatory damages to the extent that injunctive relief is not adequate to fully place the Estate in the position it would have been in but for the Defendants' wrongful conduct, in an amount to be determined at trial, plus pre-judgment and post-judgment interest, to the full extent permitted by law or in equity;

(d) Alternatively, awarding the Estate the value of the Painting as of the time of trial;

(e) Awarding the Estate punitive damages by virtue of the Gallery's bad faith refusal to return the Work;

(f) Awarding the Estate the costs and disbursements of this action, including reasonable attorney's fees; and

(e) Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
2018-February-08

**CAHILL COSSU NOH & ROBINSON LLP**

By:  *s/ John R. Cahill*
John R. Cahill
Paul S. Cossu
Megan E. Noh

70 West 40th Street, Fl. 15
New York, NY 10018
212-719-4400

*Attorneys for Plaintiff Bouvier Beale Jr.*
*as Executor of the Estate of Edith Bouvier Beale*